# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# ATHENS DIVISION

| | |
|---|---|
| STEPHANIE MADDOX, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **KELLY GIRTZ**, INDIVIDUALLY AND IN ) | CIVIL ACTION |
| HIS OFFICIAL CAPACITY AS MAYOR, ) | No. _____ |
| UNIFIED GOVERNMENT OF ATHENS- ) | |
| CLARKE COUNTY, GEORGIA, **BLAINE** ) | |
| **WILLIAMS**, INDIVIDUALLY AND IN ) | |
| HIS OFFICIAL CAPACITY AS COUNTY ) | |
| MANAGER, UNIFIED GOVERNMENT ) | |
| OF ATHENS-CLARKE COUNTY, ) | |
| GEORGIA, AND THE **UNIFIED** ) | |
| **GOVERNMENT OF ATHENS-** ) | |
| **CLARKE COUNTY, GEORGIA,** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT FOR DAMAGES

This is a retaliation action brought pursuant to 42 U.S.C. §1983 for violation of civil rights under color of state statute, ordinance, regulations or customs or usage of rights, privilege and immunities secured by the First Amendment to the United States Constitution (free speech), along with a pending state law claim asserted pursuant to the Georgia Whistleblower Act (O.C.G. A. § 45-1-4) for damages and equitable relief.

**Jurisdiction and Venue**

1.

The jurisdiction of this court is evoked pursuant to 28 U.S.C. § 1331 and 1343(a)(3) and (4). Declaratory and injunctive relief are sought pursuant to 28 U.S.C. §§2201, 2202. Venue is appropriate pursuant to 28 U.S.C. § 1391 (b) and (c).

2.

The jurisdiction for the pending state law claim evolves from 28 U.S.C.§ 1343(a)(3), inasmuch as the state claim derives from common nucleus of operative facts stated herein.

**Parties**

3.

Plaintiff, STEPHANIE MADDOX, is a former employee of the Unified Government of Athens-Clarke County, GA, hereinafter "ACC" which is located within the geographical confines of this court.

4.

Defendant, KELLY GIRTZ, was elected to the position of Mayor and sworn into office in or around January 2019. Part of his duties includes administering personnel policies in a manner that does not violate the First Amendment rights of ACC employees, inclusive of the plaintiff.

5.

Defendant, BLAINE WILLIAMS, an appointee, occupied the position of County Manager during the relevant timeframe of the acts which gave rise to this action. Part of his duties included the management of all policies, programs, contracts, ordinances, and resolutions approved and directed by the Mayor and Commission in a manner that did not violate the First Amendment rights of ACC employees, inclusive of plaintiff.

6.

Defendant ACC is a public body authorized pursuant to the provisions of Article IX, Section III paragraph 11 (a) Ga. Constitution, and its official representative is the Mayor, Kelly Girtz, who can be served with a copy of the complaint and summons at 301 College Avenue, Athens, GA 30601 (Sec. 8-102(b) Ordinance).

**Facts**

7.

Plaintiff began her employment with ACC in 2010 as an analyst in the Finance Department and she was appointed by the then Mayor, Nancy Denson, to the position of Internal Auditor in 2015.

8.

On October 29, 2018, plaintiff filed an Open Records Act request to obtain access to a report prepared by Consultants who were retained to prepare a report that dealt with two main salary issues: compression and equalization of ACC employees relative to the surrounding counties 'employees.

9.

Plaintiff had previously heard the various innuendos from some members of the public and from the various advocacy groups that the contents of the report had indicated various misappropriations of public funds and other various contradictory misuse of allocated funds.

10.

Two days later, Defendant Blaine Williams questioned plaintiff as to why she wanted a copy of the Consultant's report since it had nothing to do with her assigned duties, and he concluded that the only reason that she requested the report was to give it to the media, and other members of the public.

11.

Plaintiff not wanting to cause any more excitability in Defendant Williams who was screaming that he would have her job unless she left this matter alone, did not respond further to him. Plaintiff did not report to Defendant Williams. Defendant eventually left plaintiff's office.

12.

Within three days after the meeting with Defendant Williams, plaintiff, telephoned, emailed and/or sent written communications to the Commissioners informing them of Defendant Williams' threats that he made to have her employment with ACC terminated because of plaintiff's alleged misuse of time and staff in using the Open Records Act to request a report that had nothing to do with her duties at ACC.

13.

Some Commissioners expressed their concerns about the Consultant's report and the fact that they had not yet seen this document.

14.

The report was available to the public and could be obtained through the Open Records Act by anyone who requested a copy of such.

15.

The then Mayor, Nancy Denson, to whom plaintiff did report, approached plaintiff a few days later and requested that plaintiff rescind her Open Records Act request, and she would see that plaintiff receive a copy of the Consultant's report and the other documents as set forth in her request.

16.

Plaintiff did rescind her Open Records Act request, and on November 30, 2018, plaintiff received three different versions of the pay study reports, and one salary spread sheet indicating salary adjustments for all ACC employees.

17.

After reviewing the pay study, plaintiff discovered that Defendant Williams had misappropriated more than 4.8 million dollars by not eliminating compression and only choosing to evaluate a limited number of positions within ACC.

18.

In January 2019, the then Mayor's term ended, and Defendant Kelly Girtz was sworn in as the new mayor.

19.

Defendant Girtz immediately met with plaintiff and gave her a negative evaluation during their first monthly meeting. He informed plaintiff that Defendant Williams had told him about plaintiff requesting a copy of the Consultant's report and Defendant Williams' belief that plaintiff only wanted to give the report to the media and to the public. Defendant Girtz gave plaintiff a stern warning about repeating such conduct if she wanted to remain employed with ACC.

20.

During the foregoing meeting, plaintiff articulated to Defendant Girtz that the Consultant's report had numerous contradictory and inadequate portions which demonstrated a severe problem with misuse of public funds.

21.

Prior to Defendant Girtz beginning his tenure as Mayor, he served as an unofficial mentor to plaintiff for more than ten years, and they were professional colleagues who sometimes met for breakfast or other meals outside of ACC to discuss recent issues taking place in the community as well as in ACC.

22.

Shortly after her first monthly meeting with Defendant Girtz, plaintiff's two subordinate assistants, would not perform routine assigned tasks. When plaintiff requested an explanation for their change in conduct, they responded that Defendant Girtz told them that they did not have to listen to plaintiff because she was a "nobody" and plaintiff's position did not matter to anyone in ACC.

23.

Defendant Girtz's only response to plaintiff's requests that the foregoing employees follow the correct chain of command and voice their complaints to her before presenting such to Defendant Girtz, was "everyone has the right to assert their position."

24.

This course of behavior continued throughout the remainder of plaintiff's employment with ACC. One of foregoing employees even used the "nigger" word multiple times and referred to an adult male, African-American worker as "their boy" in telling childhood stories to others and in plaintiff's presence.

25.

In June 2019, plaintiff was placed on a Performance Improvement Plan, hereinafter, "PIP" for 60 days. Plaintiff had performed the Internal Auditor's position duties since 2015, and never received any disciplinary action or negative performance reviews. Her duties for most part remained the same.

26.

Within three days after the PIP was issued to plaintiff, one of the Commissioners, contacted plaintiff to ascertain plaintiff's position. The Commissioner explained to plaintiff that at this time all but one of the Commissioners were confused as to the need for the PIP since plaintiff's contract has just been renewed, and the Commissioners said that they had full confidence in plaintiff.

27.

After the Commissioners were notified of Plaintiff's official complaint, the lone Commissioner who was in favor of the PIP, said that "they should just fire her [plaintiff's] ass and pay her to leave."

28.

Plaintiff was unable to fully comply with some items listed in the 2021 PIP because the deadline had not yet occurred prior to her termination or other items were dependent upon other department heads or managers' availability.

29.

In September 2019, plaintiff's request for a salary evaluation was denied, and Defendant Girtz told plaintiff that she did not deserve to have a salary evaluation.

30.

ACC terminated plaintiff's employment at a special called meeting at 7:30 pm on September 24, 2021, by a Commission vote of 8-0 notwithstanding that her contract had been renewed on July 1, 2021.

31.

Plaintiff's then attorney although present was not permitted to attend this meeting with plaintiff. The attorney and plaintiff were led to believe that the purpose of the meeting was a status check on the PIP.

32.

As plaintiff was entering the meeting, she overheard one Commissioner's rebuke of the other Commissioners as she was leaving the meeting. The departing Commissioner said to the others "you all are about to do something low down and dirty – I am leaving since I want no part of this."

33.

Prior to the execution of the last employment contract, approximately seven or so Commissioners publicly opined that plaintiff would not execute the contract with the PIP attached, and she would be gone – problem solved.

34.

Plaintiff remains unemployed and has earned no income since her termination.

35.

As a direct and proximate result of the wrongful acts by defendants, plaintiff was required to hire and employ the undersigned attorney, and to pay expenses of litigation to advance her claims as stated herein.

36.

Plaintiff has no plain, adequate or complete remedy at law. Plaintiff is suffering, and will continue to suffer, irreparable injury because of the retaliatory conduct of defendants.

**Causes of Action**

## COUNT I – 42 U.S.C. § 1983 INDIVIDUAL CAPACITY AGAINST DEFENDANT WILLIAMS

37.

Plaintiff incorporates paragraphs 1, 3, 5, 7-17, 19, 20, 34 -36 herein.

38.

Defendant Williams' attempts to block plaintiff from duly filing an Open Records Act request to obtain the Consultant's report, a public document, by threatening her employment violated plaintiff's right to free speech.

39.

Defendant's Williams' unsupported allegation to Defendant Girtz that plaintiff only sought the report to give it to the media and to the public, thus causing Defendant Girtz to initiate a pattern of harassment which culminated with plaintiff's termination violated plaintiff's right to free speech – to request public documents without retaliation.

40.

As a direct and proximate result of the wrongful acts by defendants, plaintiff has suffered damages from the humiliation and embarrassment caused by the defendants' retaliatory practices as set forth herein, in an amount to be determined at trial.

41.

Because of the willful, wanton reckless behavior of Defendant Williams in attempting to block plaintiff from obtaining public documents by using threats of getting plaintiff terminated because of her protected activity, she seeks punitive damages against this defendant in his individual capacity only.

## **COUNT I I– 42 U.S.C. § 1983 INDIVIDUAL CAPACITY AGAINST DEFENDANT GIRTZ**

42.

Plaintiff incorporates paragraphs 1, 3-5, 7-25, 28-30, 34-36, 39, 40, herein.

43.

Defendant Girtz's threatening of plaintiff's employment based upon unsupported accusations from Defendant Williams violated plaintiff's right to free speech – to request public documents without retaliation.

44.

Defendant Girtz instituted a pattern of retaliation against plaintiff by issuing the various unfounded PIP's, shunning plaintiff and causing plaintiff's subordinate employees to shun her, and ultimately terminated plaintiff's employment because she exercised her right to obtain public documents violating plaintiff's right to free speech.

45.

As a direct and proximate result of the wrongful acts by defendants, plaintiff has suffered damages from the humiliation and embarrassment caused by this defendant's retaliatory practices as set forth herein, in an amount to be determined at trial.

46.

Because of the willful, wanton reckless behavior of Defendant Girtz in attempting to hinder plaintiff from obtaining any additional public documents which could demonstrate impropriety of Defendant Williams' misuse of public funds for other projects

for which the funds were not appropriated, plaintiff seeks punitive damages against this defendant in his individual capacity only.

### COUNT III- 42 U.S.C. § 1983 (ACC -OFFICIAL CAPACITY)

47.

Plaintiff incorporates paragraphs 1, 3-36, 40, herein.

48.

Pursuant to State Law, the Commissioners (10) are the policy makers with final authority to remove plaintiff from the position of Internal Auditor (Ordinance Section 2-105(b)(3)).

49.

Defendant ACC's retaliatory practice of terminating plaintiff without cause as well as denying her the right to obtain public documents without retaliation violates plaintiff's First Amendment rights of free speech.

### COUNT IV GEORGIA WHISTLEBLOWER ACT

50.

Plaintiff incorporates paragraphs 1-6, 16-20, 30-36 herein.

51.

ACC is a local governmental entity that receives funds from the State as well as State Agencies in the operation of the entity.

52.

ACC adopted practices to prevent plaintiff from disclosing Defendant Williams' misappropriation of public funds for projects other than projects for which the funds were allocated.

53.

Plaintiff was threatened, harassed and eventually terminated after she complained to her then Supervisor, Defendant Girtz, that Defendant Blaine Williams, the County Manager had used public monies for other projects for which the monies were not appropriated.

**WHEREFORE PLAINTIFF DEMANDS** that this court grant the following:

(a) The appropriate backpay as requested herein with the accompanying prejudgment interest assessed against all defendants;

(b) Judgment against ACC for liquidated damages inclusive of, but not limited to, backpay, with prejudgment interest, and injunctive relief for reinstatement of plaintiff to a position comparable to her former position with this Defendant;

(c) Judgment against all defendants for compensatory damages in an amount to be determined at trial;

(d) Judgment against Defendants Williams and Girtz in their individual capacities for punitive damages, in an amount to be determined at trial;

(e) Reasonable attorney's fees pursuant to 42 U.S.C. §1988 assessed against all Defendants, and attorney's fees assessed against ACC pursuant to O.C.G. A. § 45-1-4(f);

(f) Trial by jury;

(g) And any other relief that the court deems just and proper.

Respectfully submitted this 28th day of October 2021.

/s/ *Ethel L. Munson*

_____
ETHEL L. MUNSON
Law Offices of Ethel L. Munson
Attorney for Plaintiff
Georgia Bar No. 529625

3295 River Exchange Drive, Suite 510
Norcross GA 30092
(770) 449-4630 (*telephone*)
(770) 449-4632 (*facsimile*)
munsonel@aol.com