## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF GEORGIA
## ATHENS DIVISION

| | | |
|---|---|---|
| **STEPHANIE MADDOX,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | **No. 3:21-CV-124 (CAR)** |
| | : | |
| **KELLY GIRTZ; BLAINE WILLIAMS;** | : | |
| **and the UNIFIED GOVERNMENT OF** | : | |
| **ATHENS-CLARKE COUNTY,** | : | |
| **GEORGIA;** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

### ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Stephanie Maddox ("Maddox") asserts claims under 42 U.S.C. § 1983 alleging Mayor Kelly Girtz ("Mayor Girtz"), County Manager Blaine Williams ("Manager Williams"), and Athens-Clarke County ("ACC") (collectively "Defendants") illegally retaliated against her for protected conduct under the First Amendment. She also asserts a state law claim alleging ACC violated the Georgia Whistleblower Act ("GWA").

Currently before the Court is Defendants' Motion to Dismiss Maddox's Second Amended Complaint. Having considered the relevant facts, applicable law, and the parties' arguments, Defendants' Motion to Dismiss [Doc. 18] is **GRANTED in part** and **DENIED in part**. Maddox's First Amendment retaliation claims against Manager

Williams and Mayor Girtz are **DISMISSED**. Maddox's First Amendment retaliation claim and GWA claim against ACC will go forward.

## BACKGROUND

The facts, as alleged in Maddox's Second Amended Complaint, are as follows: ACC first hired Maddox as a financial analyst in 2010, and in 2015, former Mayor Nancy Denson ("Former Mayor Denson") appointed Maddox to the internal auditor position—the position she held until her termination on September 21, 2021.[1]

On October 29, 2018, Maddox filed an Open Records Act ("ORA") request seeking access to a report prepared by consultants ACC retained to investigate compression and equalization of ACC employees' salaries compared to employees of surrounding counties (the "Consultant's Report" or "Report").[2] Maddox heard from various sources that the Report indicated misappropriation and misuse of public funds.[3] On October 31, 2018, Manager Williams approached Maddox and questioned why she wanted a copy of the Report.[4] Maddox alleges Manager Williams screamed in her face during the encounter that "he would get her terminated unless she left the matter alone."[5] Approximately a week later, Maddox encountered Manager Williams again, and he allegedly yelled in her face that he "was not going to let [Maddox] mischaracterize him" and touched her arm.[6]

---

[1] Plaintiff's Second Amended Complaint ("Amended Complaint"), [Doc. 17] at ¶ 7.
[2] *Id*. at ¶ 8.
[3] *Id*. at ¶ 9.
[4] *Id*. at ¶ 10
[5] *Id*. at ¶ 11.
[6] *Id*. at ¶ 12.

Days after that encounter with Manager Williams, she informed the ACC Commissioners of Manager Williams threats to "have her employment terminated because of her misuse of time and staff [for] the ORA request."[7] Four or five commissioners expressed concerns about the Report—having not yet seen it.[8] Shortly after, Former Mayor Denson approached Maddox and requested that she rescind her ORA request, and in return, Former Mayor Denson would ensure Maddox received a copy of the Report.[9] Maddox did rescind her ORA request, and on November 30, 2018, she received three versions of pay study reports, as well as a spread sheet indicating salary adjustments for all ACC employees.[10] Maddox alleges that she discovered Manager Williams misappropriated more than $4,800,000 by not eliminating compression and only choosing to evaluate a limited number of positions within ACC.[11]

In January of 2019, Former Mayor Denson's term ended, and Mayor Girtz was sworn in as Mayor. Shortly after, Mayor Girtz met with Maddox. During the meeting Maddox raised issues with what she believed to be contradictory and inadequate portions of the Report and Manager Williams' alleged misuse of funds.[12] Mayor Girtz informed Maddox that he had spoken to Manager Williams about her ORA request, and Manager Williams believed that Maddox only wanted the report to give it to the media

---

[7] *Id*. at ¶ 13.
[8] *Id*. at ¶ 14.
[9] *Id*. at ¶ 16.
[10] *Id*. at ¶ 17.
[11] *Id*. at ¶ 18.
[12] *Id*. at ¶ 22-23.

and to the public.[13] Mayor Girtz warned Maddox about repeating such conduct if she wanted to remain employed by ACC.[14] Maddox alleges, beginning in January 2019, Manager Williams would interrupt her during presentations and would use a disrespectful and hostile tone.[15]

On June 10, 2019,[16] Maddox was placed on a performance improvement plan ("PIP")—her first time receiving disciplinary action while employed by ACC.[17] Maddox objected to the PIP and contended there was no measurable means of compliance.[18] Three days later, an ACC commissioner contacted Maddox and stated some of the commissioners were confused by the PIP, as her contract was recently renewed.[19] In September 2019, Mayor Girtz denied Maddox's request for a salary evaluation.[20]

From February 20, 2020, until her termination in September 2021, Manager Williams would not permit ACC department directors to provide information or documents Maddox requested without his approval.[21] In March of 2020, ACC Commissioners were notified of Maddox's official complaints.[22] Maddox alleges ACC retained outside counsel to investigate and prepare a report on Maddox's allegations of

---

[13] *Id.*
[14] *Id.*
[15] *Id.* at ¶ 20.
[16] June 10, 2019 PIP, [Doc. 18-3] at p. 25-27.
[17] Amended Complaint, [Doc. 17] at ¶ 28.
[18] *Id.*
[19] *Id.* at ¶ 30.
[20] *Id.* at ¶ 33.
[21] *Id.* at ¶ 19.
[22] *Id.* at ¶ 31.

harassment and discrimination—which included an investigation of the ORA incident with Manager Williams.[23]

In early 2021, ACC's counsel told the commissioners that "there were five other strategies besides performance to end Maddox's employment."[24] Maddox's attorney later emailed ACC Commissioners to express concerns with the ongoing investigation.[25] Maddox's contract was renewed on July 1, 2021, and she was placed on a second performance improvement which took effect on the same day.[26] But Maddox was unable to comply with certain the terms of the PIP for various reasons she alleges were outside of her control.[27] Maddox's employment was terminated by a unanimous ACC Commission vote on September 21, 2021.[28]

On October 28, 2021, Maddox filed the present case seeking damages for retaliation based on conduct protected under the First Amendment as well as violations of the GWA. Defendants now move to dismiss Maddox's Second Amended Complaint ("Amended Complaint").

---

[23] *Id.* at ¶ 38.
[24] *Id.* at ¶ 39.
[25] *Id.* at ¶ 40.
[26] *Id.* at ¶ 32, 34; July 1, 2021 PIP, [Doc. 18-8] at p. 3-6.
[27] Amended Complaint, [Doc. 17] at ¶ 32.
[28] *Id.* at ¶ 34.

**LEGAL STANDARD**

On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled facts in a plaintiff's complaint.[29] To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[31] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[32]

**DISCUSSION**

**I.    Investigation Records**

ACC retained outside counsel to investigate Mattox's complaints of harassment and discrimination.[33] ACC's counsel prepared a formal report detailing its findings (the "Investigation Report").[34] Defendants attached the Investigation Report and corresponding exhibits to their Motion to Dismiss and rely on these documents to

---

[29] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[31] *Id.*

[32] *Twombly*, 550 U.S. 544, 556 (2007).

[33] *See generally*, Report and Exhibits, [Docs. 18-2 - 18-8].

[34] *Id.*

support arguments in their Motion.[35] Thus, the Court must first address whether it may consider the investigation report and the corresponding exhibits in ruling on Defendants' Motion. Under the "incorporation by reference" doctrine, a court may consider extrinsic evidence in ruling on a motion to dismiss without converting it into a motion for summary judgment when "a plaintiff refers to a document in its complaint, the document is central to [the Plaintiff's] claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."[36]

The Court concludes the findings in the Investigation Report itself are not incorporated by reference, but specific exhibits are. Maddox only tangentially references the findings in her Second Amended Complaint, and they are not central to Maddox's claims. Thus, the Court will not consider the findings in ruling on Defendants' Motion.

But the following exhibits are incorporated by reference: Maddox's June 10, 2019 PIP;[37] her Disciplinary Action Form;[38] and her July 1, 2021 PIP.[39] Maddox refers to each of the three documents in her Amended Complaint.[40] The PIPs and the Disciplinary Action Form are undoubtedly central to Maddox's claims—both factually and legally. The execution dates of each document are critical to the Court's calculation of the statute of

---

[35] Defendants' Motion to Dismiss, [Doc. 18].

[36] *Davis v. Clayton*, No. 7:17-cv-02076-LSC, 2018 U.S. Dist. LEXIS 120666, at *6-7 (N.D. Ala. July 19, 2018) (citing *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007)); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

[37] June 10, 2019 PIP, [Doc. 18-3] at p. 25-27.

[38] Disciplinary Action Form, [Doc. 18-3] at p. 29.

[39] July 1, 2021 PIP, [Doc. 18-8] at p. 3-6.

[40] Amended Complaint, [Doc. 17] at ¶ 28, 29, 30, 31, 32, 37, 52, 64.

limitations associated with Maddox's allegations. Maddox has not challenged the contents or the authenticity of the PIPs or the Disciplinary Action Form. Thus, the three documents are incorporated by reference, and the Court will consider them. The Court has not considered any other documents in ruling on Defendants' Motion to Dismiss.

## II.     Statute of Limitations and the Continuing Violation Doctrine

Defendants argue that many of the allegations which form the basis of Maddox's claims are barred by the statute of limitations. Although Maddox contends the allegations are not barred under the continuing violation doctrine, the Court is unconvinced.

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought."[41] "The applicable statute of limitations for a §1983 claim arising in Georgia is two years."[42] But due to the COVID-19 pandemic, the Georgia Supreme Court entered multiple orders extending statute of limitations deadlines. In its fourth Order, the Georgia Supreme Court declared "[t]he 122 days between March 14, 2020 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation."[43] The Georgia

---

[41] *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).
[42] *Presnell v. Paulding Cty.*, 454 F. App'x 763, 767 (11th Cir. 2011) (citing *Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986)).
[43] Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf (July 10, 2020).

Supreme Court issued additional guidance on the tolling of statutes of limitations under

the statewide judicial emergency orders.[44] The Guidance Order states:

> [T]he tolling of a statute of limitation suspends the running of the period of
> limitation, but it does not reset the period of limitation. If the period of
> limitation for a particular cause of action commenced prior to March 14,
> 2020—that is, if the "clock" had started to run before the entry of the Chief
> Justice's order—the running of the period of limitation was suspended on
> March 14, and the running of that period will resume when the tolling
> provision of the March 14 declaration has expired or is otherwise
> terminated.[45]

The tolling provision for statutes of limitations expired on July 14, 2020.[46] Thus, the 122

days from March 14, 2020 and July 14, 2020, are excluded from the Court's calculations.

A.  Allegations Against Manager Williams

Maddox alleges Manager Williams engaged in four acts of retaliation after she

filed her ORA request on October 29, 2018.[47] The first occurred on October 31, 2018, when

Manager Williams allegedly screamed in Maddox's face and told her that "he would get

her terminated unless she left the matter alone."[48] The second occurred "within a week

or so" of the October 31, 2018 encounter when Manager Williams yelled in Maddox's face

and touched her arm.[49] The third occurred from January 2019 through her termination in

---

[44] *See* Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide
Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-
content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf (Apr. 6, 2020).
[45] *Id.*
[46] *See* Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia,
https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf (July 10, 2020).
[47] Amended Complaint, [Doc. 17] at ¶ 8.
[48] *Id.* at ¶ 11.
[49] *Id.* at ¶ 12.

September 2021, when Manager Williams would interrupt Maddox during her presentations "for no reason other than to glare at her" and used "a disagreeable hostile tone in addressing any matter that involved [Maddox]."[50] And the fourth occured from February 20, 2020, through her termination in September 2021, when he did not permit ACC department directors to provide Maddox with the information or documents she requested in the performance of her official duties.[51]

Maddox's first two allegations against Manager Williams fall outside Georgia's two-year statute of limitations for § 1983 claims. The statute of limitations on Maddox's first allegation ran on March 2, 2021—two years and 122 days after her initial encounter with Manager Williams. Likewise, Mattox's second allegation occurred "within a week or so" of the first. Maddox did not file her initial complaint until October 28, 2021. Thus, both allegations fall outside the statute of limitations and are not actionable.

B. Allegations Against Mayor Girtz

Maddox alleges six acts of retaliation against Mayor Girtz. The first occurred "immediately" after he became mayor in January 2019 when he met with Maddox, "was disgusted and told [her] to shut up three times," and gave her a "stern warning about repeating such conduct if she wanted to remain employed with ACC."[52] The second and third occurred shortly after their initial meeting when Mayor Girtz told Maddox's

---

[50] *Id*. at ¶ 20.
[51] *Id*. at ¶ 19.
[52] *Id*. at ¶ 21, 22.

subordinates they did not have to listen to Maddox because she was a nobody.[53] When Maddox requested her subordinates follow the chain of command and voice their complaints to her first, Mayor Girtz replied that "everyone has the right to assert their position."[54] The fourth is the June 10, 2019 PIP and Disciplinary Action Form.[55] The fifth occurred in September 2019 when Mayor Girtz denied Maddox's request for a salary evaluation and told her she did not deserve a salary evaluation.[56] The final alleged retaliatory act occurred in July 2021 when Mayor Girtz placed Maddox on a second PIP.[57]

Maddox's first four allegations against Mayor Girtz fall outside the statute of limitations. Each of the first four allegations occurred on or before June 11, 2019, and thus, the statute of limitations ran on or before October 11, 2021. Maddox did not file her initial complaint until October 28, 2021. Therefore, each of Maddox's allegations against Mayor Girtz—except his denial of her request for a salary evaluation and the 2021 PIP—fall outside the statute of limitations and are not actionable.

C.  Continuing Violation Doctrine

Maddox contends Defendants' conduct and the allegations supporting her claims are not barred by the statute of limitations under the continuing violation doctrine. The Court disagrees.

---

[53] *Id.* at ¶ 25.
[54] *Id.* at ¶ 26.
[55] *Id.* at ¶ 26.
[56] *Id.* at ¶ 33.
[57] *Id.* at ¶ 33, 52.

The continuing violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period.[58] The Eleventh Circuit, however, has "limited the application of the continuing violation doctrine to situations in which a reasonably prudent plaintiff would have been unable to determine that a violation had occurred."[59] In the context of § 1983 cases, the Eleventh Circuit held "the continuing violation doctrine does not apply 'to plaintiffs who were able to avoid the problem by filing within the statute of limitations.'"[60]

Furthermore, "[r]epeated similar violations are not the same as a single violation of an ongoing nature."[61] "When a discrete violation 'gives rise to a new cause of action,' then each new violation 'begins a new statute of limitations period as to that particular event.'"[62] Thus, "when a defendant takes separate and discrete acts that repeatedly violate the law, the continuing violation doctrine does not apply. Instead, a plaintiff may seek to remedy the discrete violations that occurred within the limitations period."[63]

Here, the conduct Maddox alleges does not constitute a continuing violation. Maddox undoubtedly knew of the conduct forming the basis of her claims at the time it

---

[58] *Kellat v. Douglas Cty.*, No. 10-15713-D, 2011 U.S. App. LEXIS 26442, at *4 (11th Cir. Apr. 7, 2011) (citing *Ctr. for Biological Diversity v. Hamilton*, 453 F.3d 1331, 1335 (11th Cir. 2006)).

[59] *Id.*

[60] *USA Entm't Grp., Inc. v. Tony*, 847 F. App'x 642, 647 (11th Cir. 2021) (citing *McGroarty v. Swearingen*, 977 F.3d 1302, 1308 (11th Cir. 2020)).

[61] *Doe v. Swearingen*, 51 F.4th 1295, 1306 (11th Cir. 2022) (citations omitted).

[62] *Id.* (citing *Knight v. Columbus*, 19 F.3d 579, 581-582 (11th Cir. 1994) ("plaintiffs' alleged right to be paid overtime was 'violated each time the [defendant] issued . . . a paycheck that failed to include payment for overtime hours actually worked.'").

[63] *Id.* (citations omitted).

occurred, and she offers no justification as to why she could not have filed her claims within the statute of limitations. Maddox's Amended Complaint details the numerous times she complained to Former Mayor Denson, Mayor Girtz, executive staff, human resources, the ACC Commissioners, and other parties about the alleged wrongful conduct.[64] Additionally, Manager Williams' and Mayor Girtz's alleged conduct involves separate and discrete acts which span over multiple years. Maddox's temporally distant and factually dissimilar allegations do not constitute a continuing violation. Thus, the continuing violation doctrine does not save Maddox's time barred allegations.

## III.   § 1983 Claims

Maddox asserts claims under § 1983 alleging Manager Williams, Mayor Girtz, and ACC illegally retaliated against her for protected conduct under the First Amendment. To prevail on a First Amendment retaliation claim "a plaintiff must establish first, that [her] speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech."[65] "In the employment context, the required adverse action in a retaliation claim is an 'adverse

---

[64] *See generally*, Amended Complaint, [Doc. 17]; Compare with *Kellat*, 2011 U.S. App. LEXIS 26442, at *5 (Plaintiff "was able to determine that a violation of his rights had occurred, as shown by his multiple grievances filed.").
[65] *Worley v. City of Lilburn*, 408 F. App'x 248, 251-52 (11th Cir. 2011) (quoting *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)).

employment action.'"[66] Here, Manager Williams and Mayor Girtz are entitled to qualified immunity. Maddox's First Amendment retaliation claim against ACC will go forward.

A. <u>Claims Against Manager Williams and Mayor Girtz</u>

Maddox alleges Manager Williams violated her First Amendment right to request documents via the ORA without retaliation by engaging in a pattern of retaliatory harassment.[67] Two of Maddox's allegations against Manager Williams occurred within the statute of limitations: (1) Manager Williams would interrupt Maddox during presentations "for no reason other than to glare at her" and used "a disagreeable hostile tone in addressing any matter that involved [Maddox]," and (2) Manager Williams would not permit ACC department directors to provide information or documents Maddox requested without his approval.[68]

Maddox alleges Mayor Girtz's threats regarding her employment violated her First Amendment right to request documents via the ORA without retaliation.[69] Two of Maddox's allegations against Mayor Girtz occurred within the statute of limitations: (1) his denial of Maddox's request for a salary evaluation in September 2019 and (2) the

---

[66] *Id*.
[67] Amended Complaint, [Doc. 17] at ¶ 46.
[68] *Id*. at ¶ 19-20.
[69] *Id*. at ¶ 51.

second PIP issued in June 2021.[70] Finally, Maddox claims Girtz participated in her termination under the cat's paw theory.

Maddox failed to sufficiently allege that Manager Williams and Mayor Girtz engaged in any adverse employment action and that their conduct violated her clearly established rights. Thus, Manager Williams and Mayor Girtz are entitled to qualified immunity.

     *1. Qualified Immunity*

Qualified immunity protects a defendant from liability under § 1983 for discretionary acts, "as long as [those] acts do not violate clearly established … constitutional rights of which a reasonable person would have known."[71] "The immunity protects all but the plainly incompetent or those who knowingly violate the law."[72] Maddox does not dispute Manager Williams and Mayor Girtz were acting within their discretionary authority as city manager and mayor. Once a defendant has established that [he] was acting within [his] discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.[73]

---

[70] *Id.* at ¶ 52.

[71] *Jackson v. Sauls*, 206 F.3d 1156, 1164 (11th Cir. 2000).

[72] *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) (quotation omitted).

[73] *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019).

Overcoming an official's qualified immunity defense ordinarily involves a two-part inquiry. Courts consider: (1) "[whether] the facts, construed in the light most favorable to the plaintiff, show that a constitutional right has been violated; and (2) whether the right violated was clearly established."[74] Both elements must be satisfied to overcome qualified immunity. Courts may address these factors in either order it deems most appropriate.[75] If the plaintiff fails to establish either element, the official is entitled to qualified immunity.[76]

Here, Maddox fails to satisfy both elements. First Maddox's allegations, accepted as true, do not show Manager Williams or Mayor Girtz engaged in any adverse employment action. In *Bell v. Sheriff of Broward Cty.*, the Eleventh Circuit recognized "[o]ur caselaw on the adverse action of a First Amendment retaliation claim brought by a public employee is a bit muddled."[77] The panel proceeded to analyze an apparent conflict in its precedents:

> In 2004, we held that a "public employer retaliates [in violation of the First Amendment] when [it] takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." *Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004), *abrogated as to Title VII standard by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006). An "adverse employment action," we explained in Stavropoulos, is an action that "involve[s] an important condition of

---

[74] *Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011) (quotation omitted).

[75] *Case v. Eslinger*, 555 F.3d 1317, 1325-26 (11th Cir. 2009).

[76] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[77] *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1377 (11th Cir. 2021).

employment," and we listed as examples "discharges, demotions, refusals to hire or promote, and reprimands." *Id.* at 619. See also *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300-02 (11th Cir. 2005) (applying *Stavropoulos* and holding that constructive discharge is an adverse employment action but that reprimands, negative evaluations, threats of job loss and suspensions without pay, exclusions from meetings, and removal of job duties—even in the aggregate—are not).

A year later, in 2005, we addressed the adverse action standard for First Amendment retaliation claims brought by private citizens. Adopting the view of the majority of the circuits, we held that the standard is an objective one: "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (internal quotation marks and citation omitted). In so doing, we distinguished *Stavropoulos*: "The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there. In the employment context, the required adverse action is 'adverse employment action.' Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers." *Id.* at 1252 (quoting *Stavropoulos*, 361 F.3d at 616). See also *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (applying *Bennett* to the First Amendment retaliation claim of a prisoner).

The panel stated if it "saw no way out of the precedential conundrum, we would have to apply *Stavropoulos* as the earlier decision."[78] But, because the plaintiff lost under both precedents, the panel did not "confront the question of what prior decision to apply, and mention[ed] the potential intra-circuit conflict to flag the matter for litigants, attorneys, and future panels."[79] As the earlier and more factually similar decision, the Court applies *Stavropoulos* but notes Maddox's Amended Complaint fails to sufficiently

---

[78] *Id.* at 1377-78 (citing *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020)).

[79] *Id.* at 1378.

allege Manager Williams and Mayor Girtz engaged in any adverse employment action under either precedent.

In *Akins*, the Eleventh Circuit applied *Stavropoulos* and held that reprimands, negative evaluations, threats of job loss and suspensions without pay, exclusions from meetings, and removal of job duties—even in the aggregate—are not adverse employment action.[80] Maddox's allegations against Manager Williams and Mayor Girtz pale in comparison to the conduct in *Akins* and are insufficient to establish adverse employment action under Eleventh Circuit precedent.

But while Maddox admits Mayor Girtz "was not the final decisionmaker and had no authority to solely discharge plaintiff without the commissioners' final vote," Maddox attempts to implicate Mayor Girtz in her eventual termination—and thus, adverse employment action—under the "cat's paw" theory.[81] Specifically, Maddox alleges that Mayor Girtz initiated a pattern of retaliatory harassment because of Manager Williams' "unsupported allegation" which cumulated in Maddox's termination.[82] The Court is unconvinced.

---

[80] *Akins*, 420 F.3d at 1300-02.
[81] Maddox's Response, [Doc. 19] at p. 14.
[82] Amended Complaint, [Doc. 17] at ¶ 47.

The Eleventh Circuit has not conclusively held that the cat's paw theory applies in the context of § 1983.[83] Analyzing the theory in a Title VII case, the Eleventh Circuit held "[a]t times, a discharge recommendation by a party without actual power to discharge an employee may be actionable if the plaintiff proves the recommendation 'directly resulted in the employee's discharge.'"[84] But, "the causation must be 'truly direct' -- the plaintiff 'must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee.'"[85]

Maddox fails to allege or offer a well-pled factual basis to support the theory that Mayor Girtz recommended Maddox's discharge or that Mayor Girtz's recommendation directly resulted in Maddox's discharge. Additionally, the causation here is in no way "truly direct." As previously discussed, many of Maddox's allegations supporting her cat's paw theory fall outside the statute of limitations. Additionally, between her initial meeting with Mayor Girtz and her termination, Maddox's contract was renewed twice.[86] Thus, Maddox's cat's paw theory fails.

---

[83] *Gilroy v. Baldwin*, 843 F. App'x 194, 197 (11th Cir. 2021) ("As for the cat's paw theory -- assuming *arguendo* that it applies in the § 1983 context").

[84] *Id*. at 196 (quoting *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999)).

[85] *Id*.

[86] Amended Complaint, [Doc. 17] at ¶ 30, 34, 37.

Second, there is no clearly established law to put Manager Williams and Mayor Girtz on notice that their conduct was unconstitutional. Maddox fails to cite factually similar cases where officials without the authority to terminate an employee engaged in similar conduct. Instead, she relies on *Murphy v. Demings*, where the Eleventh Circuit held "'we do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate,' in the circumstances."[87] This alone is insufficient to satisfy Maddox's burden of demonstrating Manager Williams and Mayor Girtz are not entitled to qualified immunity. "The controlling question in the 'clearly established' prong of the qualified immunity analysis is whether the individual Defendants received 'fair warning' that their conduct was unconstitutional."[88] The "standard is a demanding one."[89] This is especially true in the context of the First Amendment, considering "a defendant in a First Amendment suit will only rarely be on notice that his actions are unlawful."[90] Because Maddox failed to sufficiently allege Manager Williams and Mayor Girtz engaged in adverse employment action, or that their

---

[87] *Murphy v. Demings*, 626 F. App'x 836, 839 (11th Cir. 2015) (citation omitted).
[88] *Sasser v. Bd. of Regents*, No. 21-14433, 2023 U.S. App. LEXIS 5745, at *7 (11th Cir. Mar. 10, 2023) (citing *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021)).
[89] *Cantu v. City of Dothan*, 974 F.3d 1217, 1235 (11th Cir. 2020).
[90] *Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000); *see also Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) ("It is particularly difficult to overcome the qualified immunity defense in the First Amendment context.").

conduct violated her clearly established rights, Manager Williams and Mayor Girtz are entitled to qualified immunity.

B. <u>Claim Against ACC</u> [91]

Maddox alleges ACC illegally terminated her employment in retaliation for conduct protected by the First Amendment.[92] ACC contends Maddox's claim must be dismissed because she failed to allege the commissioners who voted to terminate her employment were on notice of her alleged protected speech from three years prior.[93] The Court disagrees.

Construing the Amended Complaint in the light most favorable to Maddox and accepting all well-pled facts as true, the Court concludes Maddox's Amended Complaint sufficiently alleges the 2021 commissioners were on notice of Maddox's alleged protected speech.[94] Maddox alleges that days after an encounter with Manager Williams, she informed the Commissioners of the threats Manager Williams allegedly made in response to her ORA request.[95] Four or five commissioners expressed concerns about the

---

[91] *Quinn v. Monroe Cnty.*, 330 F.3d 1320, 1325 (11th Cir. 2003) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)) ("Municipal liability may arise with regards to an employment decision, such as a termination, provided that the decisionmaker 'possesses final authority to establish municipal policy with respect to the action ordered.'").

[92] Amended Complaint, [Doc. 17] at ¶ 46.

[93] Defendants' Response, [Doc. 18-1] at p. 17.

[94] *Sinaltrainal*, 578 F.3d at 1260.

[95] Amended Complaint, [Doc. 17] at ¶ 13.

Consultant's Report—having not yet seen it.[96] After being placed on a PIP in June 2019, a commissioner contacted Maddox and explained "all but one of the Commissioners were confused as to the need for the PIP since plaintiff's contract has just been renewed, and the Commissioners said they had full confidence in plaintiff."[97]

Furthermore, Maddox specifically alleges that in March 2020, "these Commissioners were notified of plaintiff's official complaints, and the lone commissioner who was in favor of the PIP, said that 'they should just fire [Maddox's] ass and pay her to leave."[98] When incoming commissioners were seated, they received draft copies of the investigation report ACC's outside counsel prepared—which included an investigation of the ORA incident with Manager Williams.[99] In early 2021, the Commissioners questioned ACC's outside counsel as to why Maddox "was not yet gone."[100] In May 2021, Maddox's former attorney "sent these Commissioners emails about plaintiff's concerns relative to the ongoing investigation."[101] Finally, at a status meeting three days before her termination, Maddox states she overheard a commissioner say "you all are about to do

---

[96] *Id.* at ¶ 14.
[97] *Id.* at ¶ 30.
[98] *Id.* at ¶ 31.
[99] *Id* at ¶ 38. The Court notes that Defendants' attached the interim investigative report to their Motion to dismiss and contend it "nowhere mentions Maddox's alleged protected speech of raising concerns about misappropriation." *See* Defendants' Reply, [Doc. 21] at p. 8. But, the Court previously found the interim investigative report itself was not incorporated by reference. Thus, at this stage, the Court is bound to accept Maddox's well-pled allegations as true.
[100] *Id.* at ¶ 39.
[101] *Id.* at ¶ 40.

something low down and dirty – I am leaving since I want no part of this."[102] On

September 24, 2021, ACC terminated Maddox's employment by an 8-0 vote.[103]

Defendants do not dispute ACC Commissioners had the final authority to remove

Maddox from the internal auditor position.[104]

Construing the Amended Complaint in the light most favorable to Maddox, the

Court concludes that Maddox has pled sufficient facts to support ACC knew of her ORA

request. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss Maddox's First

Amendment retaliation claim against ACC.

### IV.   GWA Claim

Finally, Maddox asserts a state law claim under the GWA alleging ACC

terminated her in retaliation for disclosing Manager Williams' alleged misappropriation

of funds.[105] Defendants' contend the allegations in Maddox's Amended Complaint do not

establish the required elements of a GWA claim.[106] The Court disagrees.

The GWA "precludes a public employer from retaliating against a public

employee for disclosing 'a violation of or noncompliance with a law, rule, or regulation

---

[102] *Id.* at ¶ 36.
[103] *Id.* at ¶ 34.
[104] *Id.* at ¶ 57; Defendants' Response, [Doc. 18-1] at p. 11.
[105] *Id.* at ¶ 61-65.
[106] Defendants' Response, [Doc. 18-1] at p. 18.

to either a supervisor or a government agency,' or 'for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation.'"[107] Prohibited retaliation includes "the discharge, suspension, or demotion by a public employer of a public employee or any other adverse employment action."[108] The Georgia Court of Appeals clarified "the phrase 'any other adverse employment action' in OCGA § 45-1-4 (a) (5) should be interpreted to mean employment action analogous to or of a similar kind or class as 'discharge, suspension, or demotion.'"[109] Thus, Maddox's termination is the only actionable act of retaliation under the GWA.

A party establishes a prima facie case under the GWA by alleging that (1) she works for a public employer; (2) she disclosed a violation of, or noncompliance with, a law, rule, or regulation to a supervisor or agency; (3) she experienced an adverse employment action; and (4) there is a causal relationship between that disclosure and the

---

[107] *Franklin v. Pitts*, 349 Ga. App. 544, 546 (2019) (citing O.C.G.A. § 45-1-4 (d)(2),(3)).

[108] O.C.G.A. § 45-1-4 (a)(5).

[109] *Franklin*, 349 Ga. App. at 554.

adverse employment action.[110] There is no dispute Maddox worked for a public employer and that she suffered an adverse employment action when she was terminated.

To trigger protections, the GWA requires disclosure of a violation of or noncompliance with a law, rule, or regulation to either a supervisor or a government agency.[111] The GWA defines law, rule, or regulation to include "any federal, state, or local statute or ordinance or any rule or regulation adopted according to any federal, state, or local statute or ordinance."[112] While Maddox does not specifically identify a particular law, rule, or regulation Manager Williams' conduct allegedly violated, she does alleges Manager Williams "misappropriated more than 4.8 million dollars by not eliminating compression and only choosing to evaluate a limited number of positions within ACC."[113] For the purposes of this Motion, the Court concludes Maddox's disclosure of the alleged misappropriation of funds—viewed in the light most favorable to Maddox—satisfies the second element of the GWA.

Finally, ACC argues Maddox's termination is not actionable under the GWA because the 2021 Commissioners were not on notice of her protected speech, and Maddox

---

[110] *Lamar v. Clayton Cnty. Sch. Dist.*, 605 Fed. Appx. 804, 806 (11th Cir. 2015) (citing *Forrester v. Ga. Dep't of Hum. Servs.*, 308 Ga. App. 716 (2011)).
[111] *Franklin*, 349 Ga. App. at 546 (citing O.C.G.A. § 45-1-4 (d)(2),(3)).
[112] O.C.G.A. § 45-1-4(a)(2).
[113] Amended Complaint, [Doc. 17] at ¶ 18.

was reappointed twice in the three years between her alleged whistleblowing and termination.[114] As previously discussed, Maddox has pled sufficient facts to support ACC knew of her ORA request. While ACC correctly states that "[i]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law,"[115] the Court will not hold Maddox to a summary judgment standard for causation on a motion to dismiss. Maddox has sufficiently alleged a causal connection between her alleged protected speech and termination for the GWA claim to proceed.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [Doc. 18] is **GRANTED in part** and **DENIED in part**. Maddox's First Amendment Retaliation claims against Manager Williams and Mayor Girtz are **DISMISSED**. Maddox's First Amendment retaliation claim and GWA claim against ACC will go forward.

**SO ORDERED,** this 30th day of March, 2023.

s/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[114] Defendants' Response, [Doc. 18-1] at p. 20.
[115] *Freeman v. Smith*, 324 Ga. App. 426, 431 (2013) (overruled on other grounds by *Franklin*, 349 Ga. App. 544).