IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| STEPHANIE MADDOX, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   Case No. 3:21-CV-124-CAR |
| | : |
| THE UNIFIED GOVERNMENT OF | : |
| ATHENS-CLARKE COUNTY, | : |
| GEORGIA, | : |
| | : |
| Defendant, | : |
| | : |
| v. | : |
| | : |
| ETHEL MUNSON, | : |
| | : |
| Intervenor. | : |

## ORDER ON MOTION TO EXTINGUISH LIEN AND
## MOTION TO WITHDRAW FUNDS

This action comes before the Court on Plaintiff Stephanie Maddox's[1] Motion to Extinguish Attorney's Lien and the Motion to Withdraw Funds from the Court's Registry filed by Ethel Munson, Intervenor and Plaintiff's former counsel. After holding an evidentiary hearing on these Motions, and carefully considering the parties' arguments, the record, and applicable law, the Court **GRANTS** Plaintiff's Motion to Extinguish Attorney's Lien [Doc. 46] and **DENIES** Munson's Motion to Withdraw Funds [Doc. 54].

---

[1] Since the filing of this case, Plaintiff has married and changed her name to Stephanie Johnson. The Court will continue to refer to Ms. Johnson as "Plaintiff" or "Stephanie Maddox."

1

Accordingly, the Clerk of Court is **DIRECTED** to disburse funds in the amount of $44,653.63, plus any accrued interest, less any administrative fees due the Clerk, to Plaintiff Stephanie Maddox.

## PROCEDURAL HISTORY AND FINDINGS OF FACT

Plaintiff Stephanie Maddox was Internal Auditor for the Athens-Clarke County Government ("ACC") until the ACC commissioners terminated her employment at a meeting on September 24, 2021.[2] At the time of her termination, Plaintiff was offered six months' severance pay totaling $44,653.63 in exchange for a release of claims.[3] Plaintiff declined the offer and, through then-counsel Ethel Munson, opted to bring this First Amendment retaliation and whistleblower suit against ACC; Kelly Girtz, the ACC Mayor; and Blaine Williams, the ACC City Manager.

When Plaintiff retained Munson as her counsel, she paid Munson approximately $10,000.00 to $11,000.00 and signed an attorney's fee contract agreeing that Munson would be entitled to one third of any amount recovered.[4] On October 28, 2021, Munson filed Plaintiff's original Complaint.[5] After Defendants moved to dismiss, Munson filed a First Amended Complaint on December 28, 2021.[6] After Defendants moved to dismiss

---

[2] Hearing Transcript 16:24–17:2; 17:12–15 [Doc. 63]; Termination Letter [Doc. 46-4 at 2].
[3] Hearing Trans. 17:20–24; 19:9–19; Employment Agreement [Doc. 46-5 at 3]; Doc. 46-4 at 2.
[4] Attorney's Fees Contract [Doc. 54-4 at 1]; Hearing Trans. 16:7–10.
[5] Complaint [Doc. 1].
[6] Defendants' Motion to Dismiss [Doc. 4]; First Amended Complaint [Doc. 6].

2

again, Munson filed Plaintiff's Second Amended Complaint on February 24, 2022.[7] In the Second Amended Complaint, Munson asserted First Amendment retaliation claims under § 1983 against Defendants Girtz, Williams, and ACC, and a Georgia Whistleblower Act claim against Defendant ACC. Defendants moved to dismiss for a third time, and Munson responded.[8] On March 30, 2023, the Court dismissed the First Amendment claims against Defendants Girtz and Williams on qualified immunity grounds, but allowed the First Amendment and whistleblower claims against ACC to proceed.[9]

On April 6, 2023, the Court issued the Rules 16/26 Order.[10] On May 23, 2023, the Court held a telephone conference over a discovery dispute that had arisen between the parties over the number of depositions Munson wanted to take and the location where they would be taken.[11] On June 20, 2023, Munson filed a Petition for a Writ of Mandamus with the Eleventh Circuit, appealing the Court's selection of the 12 witnesses to be deposed and the designated location.[12] On July 13, 2023, the Eleventh Circuit denied the Petition, finding Plaintiff did not have a "clear and indisputable right to a writ of mandamus" because the scheduling/discovery order was an exercise of the Court's broad

---

[7] Defendants' Second Motion to Dismiss [Doc. 8]; Second Amended Complaint [Doc. 17].
[8] Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. 18]; Response to Defendants' Motion to Dismiss [Doc. 19].
[9] Order Granting in Part and Denying in Part Defendants' Motion to Dismiss [Doc. 22].
[10] Rules 16/26 Order [Doc. 23].
[11] Order on Discovery Dispute [Doc. 27].
[12] Notice of USCA Case Number for Petition for Writ of Mandamus [Doc. 29].

discretion to control the course of discovery.[13] After that dispute, discovery proceeded, and on October 13, 2023, the Court granted a three month extension for discovery to conclude on February 6, 2024.[14]

Plaintiff and Munson's relationship deteriorated over the course of the representation. Plaintiff testified Munson did not update her on the progress of her case, and when Plaintiff asked about her case periodically, Munson would respond, "If there was an update, I would let you know."[15] Thus, Plaintiff signed up for a PACER account to check the status of her case herself.[16] Through her monitoring of PACER, Plaintiff noticed mistakes in Munson's court filings, but when Plaintiff notified Munson of these mistakes, Munson would not fix them and sometimes blamed Plaintiff.[17]

Plaintiff testified that after raising these concerns, Munson repeatedly encouraged her to seek new counsel. Plaintiff testified Munson told her to get a new attorney approximately "half a dozen" times in writing.[18] Plaintiff submitted records of three such times. On September 28, 2023, Munson emailed Plaintiff stating, "I strongly recommend that you begin your search for a new attorney in case such is needed."[19] Munson elaborated in a letter attached to the email:

---

[13] Notice of USCA Denying Amended Petition for Writ of Mandamus [Doc. 30].
[14] Text Order Granting Discovery Extension [Doc. 35].
[15] Hearing Trans. 20:10–18.
[16] *Id.* 20:19–22.
[17] *Id.* 21:7–25; 22:16–17; 26:12–27:14.
[18] *Id.* 15:12–14.
[19] 9-28-23 Munson Email to Plaintiff [Doc. 46-2 at 2].

4

> If for any reason you believe that you cannot or will not honor my outline of the separation of duties as illustrated herein, I cannot continue to represent you in this case. My ethical duty to represent you within the bounds of the law would be compromised. . . . You also should begin your search for new counsel should such be needed.[20]

On November 4, 2023, Munson wrote to Plaintiff, "Your continuation of your prior conduct as set forth in my September 28, 2023, [sic] is likely to lead us to approach irreconcilable differences which would necessitate my seeking to withdraw from your case for ethical concerns. I would strongly recommend that you seek substitute counsel before the situation degenerates to such."[21] Plaintiff also testified Munson verbally told her approximately a "dozen-and-a-half" times to seek new counsel.[22]

Plaintiff felt stuck because she feared no one else would take her case, and she did not have additional money to spend on a new attorney.[23] Eventually, Plaintiff noticed Munson's "work product and email response lessened to nil," and she "took it for her face value that [Munson] [did]n't want to work with [Plaintiff] any longer."[24] Despite being Plaintiff's attorney of record for over two years, over six months of which was spent in discovery, Munson had yet to conduct a single deposition—of the dozen she had

---

[20] 9-28-23 Munson Letter to Plaintiff [Doc. 46-9 at 3].
[21] 11-4-23 Munson Letter to Plaintiff [Doc. 46-10 at 2].
[22] Hearing Trans. 15:12–14.
[23] *Id.* 22:1–6; 22:22–24; 45:10–13; 46:10–25.
[24] *Id.* 16:1–5.

5

intended to take—by the time her representation of Plaintiff ended in December 2023.[25] At that point, Plaintiff "desperately tried to find" a new attorney to take her case.[26]

Munson testified that an ethical conflict developed between her and Plaintiff, relating to a report Plaintiff obtained from her therapist.[27] Munson first testified there was a conflict because it was "an illegal task" and "unethical" for Plaintiff to get this report from her therapist.[28] Munson maintained that she did not ask Plaintiff to obtain this report, which Plaintiff disputes.[29] Plaintiff maintained that she only requested the report from her therapist at Munson's direction and that she would not have otherwise known what to request.[30]

Around December 2023, Plaintiff retained new counsel. On December 8, 2023, Plaintiff's new counsel filed a notice of appearance in this case, and on December 11, 2023, Munson filed a notice of withdrawal.[31]

In March 2024, with the help of her new counsel, Plaintiff accepted a settlement offer of $44,653.63, the same as ACC's original offer of six months' severance pay.[32] But this money was offered not to release the claims Munson asserted in this action; rather,

---

[25] *Id.* 74:9–11.
[26] *Id.* 16:5–6.
[27] *Id.* 83:12–16; 84:11–23.
[28] *Id.* 83:12–84:3.
[29] *Id.* 36:12–38:5; 83:12–18.
[30] *Id.* 36:12–38:5.
[31] Notice of Substitution of Counsel [Doc. 36]; Notice of Attorney Withdrawal [Doc. 37].
[32] Hearing Trans. 19:9–19.

the settlement was made in exchange for Plaintiff's release of a wrongful termination claim against ACC for Plaintiff's allegedly improper firing—a claim Munson did not assert.[33] In fact, ACC threatened Plaintiff with Rule 11 sanctions for some of Munson's filings that had factually incorrect assertions related to Plaintiff's original claims.[34]

On April 5, 2024, defense counsel moved to deposit the $44,653.63 settlement funds in the Court's registry, which the Court granted, and the funds were deposited on April 12th.[35] On July 7, 2024, Plaintiff moved to extinguish Munson's attorney's fee lien.[36] On July 29, 2024, Munson moved to intervene and filed her response to the Motion to Extinguish two days later.[37] At the Court's direction, Munson filed a Motion to Withdraw Funds from the Registry on November 1, 2024.[38]

On March 25, 2024, Munson sent notice to the ACC County Attorney of her attorney's fee lien of $34,860.00.[39] On March 28, 2024, Munson then revised the lien to $78,630.00.[40] A draft bill sent from Munson to Plaintiff on November 9, 2023, reflects Munson's preliminary calculation of her attorney's fees for approximately $78,630.00.[41]

---

[33] 2-6-24 Epps Letter to Lail [P-1, Doc. 62-1]; Hearing Trans. 17:25–18:3; 23:6–27:7; 49:13–51:23.
[34] Hearing Trans. 18:4–7.
[35] Joint Motion to Deposit Funds [Doc. 40]; Order Directing Deposit of Funds [Doc. 41]; 4/8/2024 Docket Entry.
[36] Motion to Extinguish Attorney's Lien [Doc. 46].
[37] Motion to Intervene [Doc. 47]; Response to Motion to Intervene [Doc. 50].
[38] Motion to Withdraw Funds [Doc. 54].
[39] 3-25-24 Munson Letter to Drake [P-6, Doc. 62-6].
[40] 3-28-24 Munson Letter to Drake [P-7, Doc. 62-7]; Hearing Trans. 75:4–14.
[41] Munson Email with Bill [Doc. 46-11]; Draft Bill [Doc. 46-3].

7

Munson later proffered an Itemized Bill for $41,606.25, which she contends constitutes the attorney's fees she is owed for her work on Plaintiff's case.[42]

On February 20, 2025, the Court held a hearing on Munson's Motions to Intervene and Withdraw Funds, and Plaintiff's Motion to Extinguish Attorney's Lien. The Court orally granted Munson's Motion to Intervene for the reasons explained at the hearing.[43] The Court reserved ruling on the remaining motions for a written order. At the hearing, the Court heard testimony from Plaintiff and Munson.

## DISCUSSION

Plaintiff argues Munson's attorney's lien should be extinguished for a variety of reasons, including because Munson abandoned her client, her services provided no value to Plaintiff, and she failed to prove the value of her services. Munson argues she is entitled to attorney's fees based on the value of the services provided to Plaintiff under quantum meruit. The Court agrees with Plaintiff and extinguishes Munson's attorney's lien.

O.C.G.A. § 15-19-14(b) governs attorney's liens and states:

> Upon actions, judgments, and decrees for money, attorneys at law shall have a lien superior to all liens except tax liens; and no person shall be at liberty to satisfy such an action, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied. Attorneys at law shall have the same right and power over the actions, judgments, and decrees to enforce their liens as their clients had or may have for the amount due thereon to them.

---

[42] Hearing Trans. 58:19–59:17. The Itemized Bill was identified as Munson Exhibit 1 [M-1] at the hearing and is an exhibit to Munson's Response to the Motion to Extinguish [Doc. 50-4] and the Motion to Withdraw [Doc. 54-3].

[43] Minute Entry [Doc. 60].

"This special, or charging, lien is the equitable right of an attorney to recover his fees and costs due him for his services, and may be satisfied out of the judgment obtained by his professional services."[44] "Generally, an attorney's lien arises upon the attorney's employment and is perfected by the ultimate recovery of the judgment for his client."[45] "While the statute safeguards an attorney's right to a fee which has been earned, it does not control how the amount of the fee is determined."[46] "The validity and enforceability of an attorney's lien, and the amount of fees to award the attorney enforcing the lien, are matters for the trial court to decide."[47]

## I.     Abandonment

"An attorney may lose his right to fees for unprofessional conduct or abandonment of his client's cause."[48] "To the extent that courts retain supervisory power over the attorney-client relationship, the district court has a duty to vindicate the public interest in seeing that the attorney does not ignore the best interest of the client."[49]

> According to the weight of authority, an attorney who, without justifiable cause and without his client's consent, voluntarily abandons or withdraws from a case upon which he has entered before its termination and before he has fully performed the services required of him with respect thereto loses all right to compensation for services rendered, although in some cases the

---

[44] *Howe & Assocs., P.C. v. Daniels*, 274 Ga. App. 312, 314 (2005) (citation omitted).
[45] *Hester v. Chalker*, 222 Ga. App. 783, 784 (1996) (citation omitted).
[46] *Greer, Klosik & Daugherty v. Yetman*, 269 Ga. 271, 274 (1998).
[47] *McDonald & Cody v. State*, 364 Ga. App. 457, 461 (2022) (citation omitted).
[48] *Odom v. Hilton*, 105 Ga. App. 286, 292 (1962) (citation omitted); *Flip Face U.S.A., LLC v. Alexandria Moulding, Inc.*, No. 1:15-CV-883-MHC, 2020 WL 10700150, at *4 (N.D. Ga. May 8, 2020) (citation omitted).
[49] *Sweeney v. Athens Reg'l Med. Ctr.*, 917 F.2d 1560, 1573 (11th Cir. 1990) (citation omitted).

attorney has been allowed to recover on a quantum meruit notwithstanding his abandonment of his employment.[50]

The Court finds that Munson abandoned her client without justifiable cause and has therefore lost the right to recover any additional attorney's fees. Munson's repeated insistence for Plaintiff to find new counsel—in combination with her failure to provide Plaintiff with updates on the progress of her case, and general apathy in pursuing the action—was unwarranted, acted as a constructive withdrawal without just cause, and amounted to abandonment of her client. By the time Munson's representation ended, and over six months into discovery, Munson had taken none of the twelve planned depositions. When Plaintiff expressed concerns to Munson about her representation, mistakes in court filings, and not receiving updates on her case,[51] rather than assuaging Plaintiff's concerns, Munson repeatedly encouraged Plaintiff to seek other counsel.[52] After Plaintiff raised these concerns with Munson, Munson suggested Plaintiff retain new counsel approximately two dozen times.

Plaintiff's concerns about Munson's representation were valid, and Plaintiff brought them to Munson in a reasonable manner. Munson's insistence that Plaintiff seek new counsel was not justified by any legitimate conflict between them, and the frequency

---

[50] *Odom*, 105 Ga. App. at 292–93 (citation omitted).
[51] Hearing Trans. 15:15–22; 20:13–25; 21:7–17; 22:7–21; 26:12–27:14.
[52] *Id.* 15:8–14; 22:16–21; 79:4–6.

of Munson's suggestions warranted Plaintiff's feeling she had no choice but to find new counsel.

Munson contends she was justified in encouraging Plaintiff to retain new counsel because she had legitimate ethical concerns about Plaintiff's actions in seeking records from her therapist. The Court disagrees. The Court credits Plaintiff's testimony that she would not have sought the records without Munson's direction. Regardless, Plaintiff obtaining such records was insufficient reason for Munson to advise Plaintiff to seek new counsel over a dozen times. Thus, because Munson abandoned her client, she has forfeited her right to any further compensation for the legal services she provided.[53]

## II. Quantum Meruit

The Court also finds Munson's attorney's lien must be extinguished because (1) Munson's services provided no value to Plaintiff; and (2) Munson failed to prove the value of her services. Plaintiff and Munson agree that quantum meruit is the proper measure for determining Munson's fees in this matter.[54]

---

[53] *See Odom*, 105 Ga. App. at 293; *Tolson v. Sistrunk*, 332 Ga. App. 324, 329 (2015); *Flip Face U.S.A., LLC*, 2020 WL 10700150, at *5.

[54] Hearing Trans. 65:3–11; Brief in Support of Motion to Extinguish Attorney's Lien [Doc. 46-1 at 3–4]; s*ee also Anderson v. Artola*, No. 7:18-CV-188 (HL), 2019 WL 5865930, at *3 (M.D. Ga. Nov. 8, 2019) ("The proper remedy for an attorney who is prevented from recovering under the contract is quantum meruit."). Although "an express and an implied contract for the same thing cannot exist at the same time between the same parties," here, "the contract did not include post-termination provisions" for Munson withdrawing without just cause. *See Haldi v. Watson*, 240 Ga. App. 801, 802 (1999). Rather, the Agreement contained provisions governing if Plaintiff terminated Munson or if Munson withdrew in accordance with the Georgia Code of Professional Responsibility. *See* Doc. 54-4 at 2. Because the parties have not expressly agreed on a provision governing the current scenario, quantum meruit is the proper measure. *See Haldi*, 240 Ga. App. at 802.

### a. No Value Under Quantum Meruit

"An attorney's lien under O.C.G.A. § 15-19-14(b) is based on 'the fruits of the labor and skill of the attorney' exerted on behalf of the client[.]"[55] "[I]f an attorney is discharged before earning his contractual contingency fee, he may obtain a recovery under quantum meruit."[56]

> Quantum meruit literally means "as much as he deserves." It is an equitable doctrine based on the concept that no one who benefits from the labor and materials of another should be unjustly enriched thereby. Where quantum meruit is applicable, the provider may recover the reasonable value of goods or services transferred, but value is defined in terms of value to the recipient.[57]

"[W]hen the discharged attorney seeks recovery from a former client under quantum meruit, the fees awarded to the attorney should be determined based on the reasonable value of the services rendered to the client."[58] "It follows that if the discharged attorney's services at issue had no value to the client, 'the client has no obligation to pay for them' under quantum meruit."[59]

Munson is not entitled to quantum meruit because the services she rendered provided no value to Plaintiff.[60] Ultimately, Plaintiff accepted $44,653.63 to settle her

---

[55] *Tolson*, 332 Ga. App. at 332 (citation omitted).
[56] *Id.* at 333 (citing *Haldi*, 240 Ga. App. at 802).
[57] *Anderson*, 2019 WL 5865930, at *3 (quoting *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 62–63 (2000)).
[58] *Tolson*, 332 Ga. App. at 333 (citation omitted).
[59] *Id.* (citing *Haldi*, 240 Ga. App. at 802).
[60] *Haldi v. Watson*, 240 Ga. App. 801, 802 (1999) (citation omitted). Munson cites *Lewis v. Haskell Slaughter Young & Rediker, LLC*, 582 F. App'x 810 (11th Cir. 2014) for the proposition that she is entitled to quantum meruit. Hearing Trans. 10:18–11:2. First, *Lewis* is distinguishable because the Eleventh Circuit applied Alabama state law. To the extent that Georgia and Alabama law are the same on this issue, however, *Lewis*

claims against ACC. But this money, the same amount ACC originally offered her three years earlier upon her termination in 2021, was not offered to release the claims Munson asserted in this action. Instead, ACC offered Plaintiff the money upon the release of a wrongful termination claim against ACC—a claim Munson did not assert in this action.[61] Although Munson certainly provided some services to Plaintiff—she filed three different complaints, responded to the corresponding motions to dismiss, and engaged in some discovery[62]—Plaintiff's ultimate recovery was for the release of a wrongful termination claim that Munson did not bring.[63] Thus, Plaintiff, who already paid Munson approximately $10,000.00, has no obligation to pay additional money for the services rendered because they provided "no value" to her.[64] Now, nearly four years later, Plaintiff is no better off than before Munson's representation began.

### b. Failure to Prove Value Under Quantum Meruit

---

is distinguishable because the district court found just cause existed for the termination of the attorney-client relationship, and the Eleventh Circuit found the district court had not abused its discretion in so concluding. *Lewis*, 582 F. App'x at 812. Here, this Court has found Munson did not have just cause to terminate the attorney-client relationship; thus, *Lewis* does not dictate that Munson is entitled to quantum meruit.

[61] 2-6-24 Epps Letter to Lail [P-1, Doc. 62-1]; Hearing Trans. 49:13–50:9.

[62] Although Munson was Plaintiff's attorney of record in this case for over two years, over six months of which was spent in discovery, Munson had yet to conduct a single deposition—of the dozen she had intended to take—by the time her representation of Plaintiff ended in December 2023. Hearing Trans. 74:9–11. Munson also unnecessarily delayed the case by appealing the Court's discretionary discovery order despite "not having a clear and indisputable right to a writ of mandamus." Notice of USCA Denying Amended Petition for Writ of Mandamus [Doc. 30 at 2].

[63] Doc. 62-1; Hearing Trans. 49:13–50:9.

[64] *See Tolson*, 332 Ga. App. at 333 (citing *Haldi*, 240 Ga. App. at 802).

Even if Munson was entitled to some recovery under quantum meruit, which the Court has found she is not, the Court finds she failed to provide sufficient evidence of the value and reasonableness of the professional services she provided to Plaintiff to support an award.

"Eleventh Circuit precedent has held that hours attorneys spend on a case must be documented in order to sustain an award of attorney's fees authorized by statute. . . . That rationale is just as applicable to the district court's allocation of fees *under a fee agreement* as it is to statutorily awarded fees."[65]

> An attorney cannot recover for professional services without proof of their value. Generally, a party will proffer the opinion testimony of his present counsel as well as that of other attorneys in an effort to show what constitutes a reasonable attorney fee in light of the litigation history of the case. A party's testimony as to the approximate cost of legal fees is insufficient.[66]

Before Plaintiff retained new counsel, Plaintiff asked Munson for her bill.[67] Munson informed Plaintiff that her accountant would compile a fee petition for $350.00.[68] After repeated requests, Munson sent a draft bill to Plaintiff on November 9, 2023, reflecting Munson's preliminary calculation of her attorney's fees for approximately $78,630.00.[69] On March 25, 2024, Munson asserted an attorney's lien of $34,860.00; then on March 28,

---

[65] *Sweeney*, 917 F.2d at 1571–72 (emphasis added) (citations omitted).
[66] *Patton v. Turnage*, 260 Ga. App. 744, 748 (2003) (citation omitted).
[67] Doc. 46-2 at 3; Doc. 46-6 at 3; Hearing Trans. 16:18–23, 17:6–9.
[68] Hearing Trans. 48:2–6; 11-4-23 Munson Letter to Plaintiff [Doc. 46-10 at 1].
[69] Munson Email with Bill [Doc. 46-11]; Draft Bill [Doc. 46-3]; 9-27-23 Plaintiff Email to Munson [Doc. 46-2 at 3]; 11-3-23 Plaintiff Letter to Munson [Doc. 46-6 at 3]; Hearing Trans. 16:18–23; 45:7–24.

14

2024, Munson revised the lien to $78,630.00.[70] At the hearing, Munson proffered an Itemized Bill for $41,606.25, which she contends constitutes the attorney's fees she is owed for her work on Plaintiff's case.[71]

Munson's office manager, Angela McCoy, and her accountant prepared the Itemized Bill, but they did not attend or testify at the hearing.[72] Munson's accountant was never identified, and it is unclear what he or she did to prepare the Itemized Bill. In McCoy's declaration, she states she is responsible for recording Munson's "daily hourly usage for all open cases."[73] McCoy states the data is "kept in different files for all clients collectively – number of hours per task synchronized with Ms. Munson's and [McCoy's] calendars."[74] McCoy further avers that she provides the records to Munson's accountant for the accountant to compile a fee petition.[75] McCoy "incorporate[s] hourly information from [McCoy's] records, the individual case folders, and from Ms. Munson's daily calendars as well as [McCoy's] calendars."[76] In her declaration, McCoy described her general practices in tracking Munson's hours, but she does not state what specifically she did to create the Itemized Bill, or if she created it at all.

---

[70] Hearing Trans. 75:4–14.
[71] *Id.* 58:19–59:17. The Itemized Bill was identified as Munson Exhibit 1 [M-1] at the hearing and is an exhibit to Munson's Response to the Motion to Extinguish [Doc. 50-4] and the Motion to Withdraw [Doc. 54-3].
[72] Hearing Trans. 59:6–14; 78:21–23.
[73] Declaration of Angela McCoy [Doc. 50-1 ¶ 12].
[74] *Id.* ¶ 12.
[75] *Id.* ¶ 13.
[76] *Id.*

15

"It is well-settled that an award of attorney fees is to be determined upon evidence of the reasonable value of the professional services which underlie the claim for attorney fees,"[77] but Munson failed to offer any evidence, not even her own testimony, that her rate of $375.00 per hour, totaling $41,606.25, was "either a usual or customary fee" in this type of case.[78] Munson also failed to address the thousands of dollars Plaintiff previously paid to her and how that impacted her calculation of her fee. The Court finds Munson's explanation and support for her requested fees lacks credibility based on the multiple versions of the bill, the delay it took for Munson to produce the Bill, her initial attempts to charge Plaintiff for the creation of the Bill, the confusion as to who other than Munson compiled the Bill, and the lack of explanation of how the Bill was created.

## CONCLUSION

The Court finds Munson is not entitled to an attorney's fee in this case, and thus **GRANTS** Plaintiff's Motion to Extinguish Attorney's Lien [Doc. 46] and **DENIES** Munson's Motion to Withdraw Funds [Doc. 54]. Accordingly, the Clerk of Court is **DIRECTED** to disburse funds in the amount of $44,653.63, plus any accrued interest, less any administrative fees due the Clerk, to Plaintiff Stephanie Maddox.

**SO ORDERED**, this 28th day of March, 2025.

S/ C. Ashley Royal_____
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[77] *S. Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (1993) (citation omitted).
[78] *Patton*, 260 Ga. App. at 748.